Ladies and gentlemen, we have five cases on the calendar this morning, this afternoon. Four government employee cases, two from the American Citizens Protection Board, two from the Court of Federal Claims. One of each is not being argued, being submitted on the briefs. The one patent case that's being argued, we had another patent case that was withdrawn. Our first case is Dominguez v. the Postal Service, 05-3132. Mr. Vega. Yes, Your Honor. Please proceed. Good afternoon, Honorable Court of Appeals. It is the position of the appellant that the decision rendered by the American Citizens Protection Board shall be reversed on the basis that it was arbitrary, capricious, abuse of discretion, and secondly, that it was not supported by substantial evidence. I think the record through the appendix that we submitted indicates that the judge, in determining the credibility of the witnesses, did not even mention the statement being made by Mr. Wagner, where he said he heard Mr. Ganstate, once he became the supervisor, that he would do everything that he could to get Mr. Dominguez fired. More importantly, nowhere in his opinion does he mention that the very first time that Mr. Dominguez was apprised of all of these incidences that he was being accused of was September the 17th of 2003, which was approximately from nine weeks to three weeks prior after this happened. Mr. Vega, I see you're from Texas. You didn't come all the way from Texas to re-argue the fact. No, Your Honor. Because this case was basically decided on the credibility of witnesses and demeanor, and we can't see them. We're a court of appeals. Wasn't there substantial evidence supporting the decision of the board? And what were the errors of law? Well, our position of the errors of law is that this case basically follows on the basically of the process of due process in the sense that, from the very beginning, we were pointing out that Mr. Dominguez was never allowed his right under the collective bargaining agreement we provided, that any time anybody is accused of any adverse action, that they must be informed in writing, and based on that writing, then they can do a grievance. Whereas here, he was accused on these different processes, starting from July 22nd, the very last time was August the 28th, but never was told until September the 17th. Therefore, he was denied his right under the collective bargaining agreement to utilize the grievance process because when he was informed in September the 17th, 2003, by Mr. Gant, basically at that time he was being told, we were basically making a request for your removal. His only option at that point was either to accept the removal or do the process of appealing it. So the error of law that we're taking here, Your Honor, is that basically the fundamental error of law is the due process violation of a client's rights, and that he was never, ever given the opportunity to grieve any of these allegations that were given against him by basically Mr. Gant, as well as Mr. Moores, as well as the Director of Transportation. And also, it is our position that in form, as far as the facts indicate, that it is clear, I think it is undisputed, based on the exhibits placed on tab number four, that the very first time was September the 17th that Mr. Dominguez was ever informed of these, and in that particular tab, it indicates the dates, the apparent, the allegations had occurred in reference to what is being accused of and the basis for which his removal is being predicated of. And it is our position that that goes into, again, the process that was being utilized by the U.S. Postal Service in the removal of Mr. Dominguez, in that there was a direct violation of the prerequisites of the collective bargain agreement that had been executed between the Postal Service and the union at that particular time. And more importantly, is that Mr. Dominguez, in his attempt, in his rebuttal, also brought that to his attention, in the fact that he, again, was never given that opportunity. It is also our position, as a federal law, is that they don't make no mention, as a prerequisite, that the forms that needed to be filled out, like we pointed out for the AWOL, also dropped them recklessly, were never filled out, and that he was never again told about these allegations or violations by the Postal Service until many, many days later. Obviously, at that particular point in time, Mr. Dominguez could not in any way utilize what his rights were, but other than go through the process that we're here now today. And it is the position of the Appellate Audible Court is that the Court, in reviewing the decision by the American Citizens Protection Board, did not follow the law. It should have been followed in the sense of making a determination as to what the process was being utilized. That's why I made the comment that nowhere in there is that even referenced, which I think is very important, other than in the appendix that I submitted before this Board, to point out the difference in the timing and the fact that the due process allegation that we've always pointed out in our briefs is that one of the fundamental violations here that we feel is that we were not given an opportunity to basically address each single one of these allegations presented by the American Citizens Protection Board, in reference to the problems that McClellan was having with him for that reason. We feel that the American Citizens Protection Board basically was rubber-stamping the decision made by the United Postal Service and did not in any way get into the merits of how that process was being utilized and how they arrived at the removal and determination of the Postal Service for purposes of determining whether or not the violations that were there had been, in essence, substantiated by any of the evidence being presented. It is the position of the appellant that the American Citizens Protection Board, in the evidence that was being presented, did not adhere to the procedures and the rules promulgated in reference to hearing these particular cases. It is the position of the appellant that fundamentally is that he was never ever given the opportunity, as I stated, and more importantly, is that this particular case has much broader implications only than this particular case because, obviously, if the court here affirms the position of the American Citizens Protection Board, then the message being sent at least to the Postal Service is that they can sit behind a wall, accumulate three, four, five instances, never inform the individual, violate the collective bargain agreement that has been entered between the Postal Service and the union, and then make the removal. And then they'll say, well, back in the Dominguez case, the court said that was OK to do. We could violate the due process requirements. We can also not even follow the collective bargain agreement because of the fact that, although we've agreed to it, although we've signed it, we don't have to do anything about that. And that is basically— Where did you bring up the collective bargain agreement question? We did it at the very first hearing. In your brief. Oh, in the due process issue is what I mentioned. What page? If you need more time, maybe you should go on rebuttal. Yes, Your Honor. Come back. Don't waste time now. Mr. Vega, where in the statement of the issues did you allege the due process errors? I pointed that out on basically in the—arguing the AWOL issue where he was not advised, and then also when he was advised of the driver recklessly. I mentioned that they never fill out the forms, and he was never informed of these violations to allow him to be able to rebut those. Well, if you take a look at your statement of the issues, you talk about the initial decision committing error as pertaining to the charge of unsatisfactory work, but nothing in there talks about due process. The second issue talks about following proper guidelines in regards to evaluating credibility of the witnesses. Where's the due process claim? If you go to page 13, Your Honor, the very first paragraph at the end, it said, if the agency does not adhere to its own policies and procedures in regards to the personal matters, then it makes a mockery of the system itself and denies its employees the right to due process. That's the only reference to due process. It's not raised as an issue, though, is it, in the statement of the issues? Well, I only raise it in the sense how the administrative judge had formed his opinion that I raised, that he felt that he did not follow the evidence. And I raised the issue as to, for example, in the AWOL, and then in the argument in making that presentation, then at the end said that by Mr. DeMing is not being given the form to fill out and being informed at that time on August 2nd or August 3rd of 2003 that he was AWOL, that then he was not allowed to basically brief that particular incident, denying him the right to due process. And that's what I pointed out in there about the documentation about the AWOL, where I mentioned in there the—and then in my rebuttal about the collective bargaining agreement that provides for an individual, an employee especially, that is a member, to be given what allegations have been accused of. So you can go ahead and brief those. Do you want to stay the rest of your time, in batch? Yes, Your Honor. You can continue, but— No, I'll do— You seem to want to have to do some homework. Well, I'll do it on the due process, Your Honor. Thank you. Mr. Bell. Good afternoon. It may please the Court. The United States Postal Service asked the Court to affirm the decision of the MSPB. I don't have much to add that's not in the brief. In addition to answering any questions the Court may have, I just want to highlight a couple of points. This—the due process argument was waived. I haven't seen one. But to the extent that it hinges on the fact that he didn't know until September that there would be charges against him, due process requires notice and an opportunity to respond. He was conceived. He was notified in September.  He seemed to be claiming that he had some right under the collective bargaining agreement to grieve this. That's new to me. I don't believe there's anything in the brief. There's certainly no evidence the collective bargaining agreement isn't in the record. I don't know what provision of the collective bargaining agreement would preclude him from grieving it. If he was deprived of a right under the collective bargaining agreement, well, then that's a claim he has to make. It hasn't been made here. And it hasn't been raised in his briefs as far as I know. I didn't see it. The—as for the notion that the Postal Service didn't follow its internal policies and procedures, I don't know that that rises to a due process—to the level of a due process violation. But there's no evidence that we didn't follow our internal processes and procedures. This notion that we have to issue—the Postal Service issues a form when an employee is AWOL is incorrect. It's actually the other way around, that the way that leave and request for leave work is that you submit a form requesting leave that's either approved or denied. And at that point, the reasons for the approval or denial are then given to the employee, but it's an employee-driven process, not an employer-driven process. Beyond that, my opponent hasn't made an argument that any finding of the administrative judge is unsupported by substantial evidence. The findings were based on testimony at a hearing. There's no transcript. Well, he is making one complaint. He says that there was testimony that his supervisors were retaliating against him because of an EEOC complaint. And there does seem to be some testimony to that effect. The motion there is— Let me just finish. I'm sorry. I may be mistaken, but I don't see that the administrative judge addressed that allegation in his opinion. Am I mistaken? I think that is mistaken, Your Honor. I think that refers to—this EEOC, I think, supports his argument that Mr. Gomes, who is the person who witnessed Mr. Dominguez driving erratically, was somehow biased against him because of—or wanted to retaliate against him because of this EEOC settlement. Now, the EEOC settlement's in the record. I'm sorry. But to answer your question, the A.J. says—and if I could find that page, sorry—says that Mr. Dominguez was asked specifically about why Mr. Gomes would have any reason to basically invent the story and that he said he could think of no reason.  Page 23 of the A.J.'s decision, which can be found at tab 3 of the Petitioner's Appendix, in the second full paragraph about three-quarters of the way down, the administrative judge says, Further, when asked—and this is when asked at the hearing—the appellant could offer no explanation for why Gomes would be motivated to fabricate a story against him. But wasn't there some testimony that his supervisors were out to get him because of the EEOC complaint? There—well, that's the full extent of it, that this—that in—certainly in Mr. Dominguez's brief, the only argument that arises from this settlement was that Mr. Gomes was out to get him. And wasn't there testimony not only from Mr. Dominguez but about co-workers to that effect? There may have been something about co-workers, but I don't see how that's relevant to the—there's no evidence that the deciding official was—had a personal animosity towards him. There were a couple of stray comments that, in the briefs, in this brief that some people were out to get him, every single one of those witnesses testified at the hearing. We don't know—and this is part of the problem when you don't present a transcript of the hearing. There's no way to know if a bias theory or some kind of retaliation theory was even advanced. There's—the fact that the AHA didn't mention anything is evidence that— Well, what is the transcript that we have here that was submitted? There's no transcript of the hearing. Then they submit supplemental appendix with transcripts. Am I mistaken? I think that's mistaken, Your Honor. All right. Anything further, Mr. Belford? He's the coordinator for the questions. We rely on— All right. Thank you very much. Mr. Begg, you have some rebuttal time. I suggest what would be most effective would be for you to respond to Mr. Bell's statement that the issues that such chaos and such sight raised are new issues before us and were not presented in the brief. Well, Your Honor, in reference to the—I'm looking at the—again, I raised it in the—my brief, and I had it in the appendix as far as the due process. And in reference to the EEOC, that was something that was brought up during the hearing. And more importantly is there are statements that we put in here about some of the co-workers saying that there was a lot of— How about the collective bargaining agreement that you raised? The collective bargaining agreement, I do mention it again in my rebuttal in response to his where he was mentioning—this is referenced as paragraph number 2A and B, where I mentioned again following up on not giving my client any of the documentation. I did state in there that by delaying— What are you reading from? I'm looking at page 3 of the rebuttal, and I'm looking kind of why the delay, kind of the last sentence starting with by delaying— So there's nothing in the opening brief about the collective bargaining agreement? No, other than the denial of the due process. Denial of the due process. I mentioned the due process was the fact that by delaying it, denying it as due process was the fact of the collective bargaining agreement that I did point out in the initial brief that he needed to be notified of the allegations that he was being basically accused to allow him the opportunity to grieve those particular elements that were being charged with. During the hearing, that was brought out to the point that we have this agreement. In fact, we challenged the judge in the sense of the fact that we did not have the right or the opportunity to grieve that, and he basically said, well, that's not before me right now. What I have before me is the fact that the Postal Service had removed Mr. Dominguez, and I'm here to hear evidence as to why you feel that that was wrong. And we said, well, we feel that by denying him this right that he's been reporting, that's not before me. So that was kind of a tough way to present that when it was cut off, because he said, I'm here only to hear evidence that pertained to whether or not the removal was warranted or not warranted. And then the evidence presented, and then we had to protect that. But I think the whole premise of our appeal here, Your Honors, is that the case here really stands on a much greater issue. That is the fundamental issue, again, of the due process. That is whether or not an agency, which is the Postal Service, having a collective bargaining agreement, whether they're just going to outright and consciously violate those terms and conditions, where, again, clearly, as a transcript we submitted indicates how much delay there was from the very first incident to the time he was first told, and was never given the opportunity to debrief, that whether or not a precedent is going to be established whereby any agency, whether it has a collective bargaining agreement, whether they're going to then follow it or not follow it, an employee that they're going to, again, sit behind the law, as we say, delay informing that employee of the allegations that they're being used against him, and then wait until they get whatever number, 3, 4, or 5, and then at that time hit him with a removal, thereby denying him his right, because you only have so many days, if it followed procedurally, to grieve it. Well, now, since they initiated the removal process, under that particular process, Mr. Dominguez then was locked in to the fact that his only option would have gone to the MSPB, in order to avoid it becoming a final position, thereby eliminating all of the other requirements under the collective bargaining agreement and the due process issue of his rights to be able to grieve that, and that's basically what we have here, and we did point in the brief the timing, which I think is very important, is that if you look at the timing and the delay that was predicated here on my client, that he basically was caught off guard, and in fact, when he was informed about a lot of these, obviously, 9 weeks to 3 weeks later, he didn't have any personal recollection of these incidences, which, you know, it was pointed out in the judge's opinion that he felt, well, since he didn't know anything about it, I didn't believe him, but I think what's more important is the fact that here we have where an individual is being confronted many weeks later, sometimes over 2 months later, of allegations of what he had done wrong, but yet was never given the opportunity to be able to do anything. It's like somebody going and getting a speeding ticket 3 months later and saying, here's your ticket for speeding 3 months earlier. That's kind of the unfortunate impact that we're having here with Mr. Dominguez, in that he was not allowed the process and procedure that was in place at that time to utilize his rights that he has under the collective bargaining agreement and the denial of due process in all of these. That's why I pointed out that there were forms that needed to be filled out, and every one of these, which is the written documentation that needed to be submitted by the postal service was informing Mr. Dominguez of the allegations, the violations that he had, and none of this was ever being done, none of this was done, none of this was followed on behalf of the postal service, and that's why it is the position of the appellant that we feel that this court, in reviewing this appeal, should reverse the decision rendered by the Emergency System Protection Board. And I thank you for your afternoon, Your Honor. Thank you, Mr. Vega. We'll take the case under review.